In the Matter of the Estate of EDWARD H. SOTHERN, Deceased.

Surrogate's Court, Ulster County, December 30, 1938.

*Hayden & Post [Waldron K. Post* of counsel], for Julia Marlowe Sothern, as executrix, etc., appellant.

*Chris J. Flanagan [William A. Kaercher* of counsel], for the State Tax Commission, respondent.

KAUFMAN, S.   It seems quite remarkable, considering the number of annuity contracts now in force, that the question here presented for decision has not been previously determined.   Yet neither efforts of counsel nor independent research on my part have revealed any reported decision of any court in this State precisely or nearly in point.   Under these circumstances the ultimate decision of this question must necessarily be of far-reaching consequence.

On December 24, 1928, Edward H. Sothern paid to the Equitable Life Assurance Society of the United States the sum of $65,243.22 and received in return a refund annuity policy, under the terms of which that corporation agreed to pay to him on December twenty-fourth of each year during the remainder of his life the sum of $6,510.   This contract provided that in event of his death before annual payments totaling $65,243.22 had been made to him, further annual payments of $6,510 each should be made by the company on December twenty-fourth of each year thereafter to his sister, Eva M. Smith, or, in event of her death, to his wife, Julia Marlowe Sothern, or to her executors or administrators until all of such annual payments, including those received by Sothern personally, should total $65,243.22.   By the terms of the instrument the right to change beneficiaries was specifically reserved to Sothern, and it was further provided that at any time after the expiration of two years from the date of the policy he might surrender it for a stated commuted value.

Sothern died on October 28, 1933, after having received four annual payments of $6,510 each.   During his lifetime he made no change of beneficiary, nor did he surrender the policy.   At the time of his death the commuted surrender value of the policy was $35,391.33.

In the tax return filed by her with the appraiser the appellant set forth this item of $35,391.33, but claimed the same to be exempt from taxation by virtue of the provisions of section 249-q of the Tax Law. The appraiser did not allow this claimed deduction, and in his report included the amount thereof in his valuation of the net estate. A *pro forma* order was thereupon entered assessing the tax upon the amount thus reported, less the usual personal exemptions. From such order this appeal to the surrogate has been taken.

At that time section 249-q of the Tax Law read as follows:

" § 249-q. Exemptions. The tax of four-fifths of one per centum of the amount of the net estate not in excess of one hundred and fifty thousand dollars imposed by section two hundred and forty-nine-n of this article shall not be payable with respect to * * *

" c. So much of the amount required to be included in the gross estate under the provisions of paragraph numbered nine of section two hundred forty-nine-r of this chapter as does not exceed one hundred thousand dollars less the aggregate of any exemptions otherwise allowable under this section."

That part of section 249-r, which is referred to in subdivision c of section 249-q, reads as follows:

" § 249-r. Gross estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated (except real property situated and tangible property having an actual situs outside this State): * * *

" 9. To the extent of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life, but only to the extent that such amount is required to be included in the gross estate under the provisions for the taxing of estates contained in any revenue act of the United States applicable to the estate of the decedent."

It is at once apparent that the basic question here to be determined is whether or not the surrender value of the annuity policy above referred to as of the date of death of Sothern is property of the kind which subdivision c of section 249-q exempts from taxation, which by reference to subdivision 9 of section 249-r is stated to be of " the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." If it does fall within that description it is unquestionably exempt from taxation. If it does not, then patently it is taxable.

It is important in this connection to note the precise nature of the contract in question. It is immediately apparent that it is

not a life insurance policy at all. On the contrary, it is readily to be observed that it is a refund annuity contract, more in the nature of a trust agreement than of a life insurance policy. It does not embrace any important provision common to ordinary life insurance policies. The principal feature of the typical life insurance policy is that it insures a beneficiary or beneficiaries, usually a dependent or dependents of the insured, against financial hardships which may otherwise result from the death of the insured. The very essence of such a contract is that it insures against the results of death.

The contract here involved is of a decidedly different sort. It does not even purport to *insure* any beneficiary against any hardships which may result from the death of Sothern. All that it guarantees in that respect is to return to Sothern's sister or to his wife or her executors or administrators after his death the original amount paid by him to the company or so much thereof as may remain at the time of his death provided he has not already received the full amount thereof prior to his death. Under this contract the so-called beneficiaries may receive something or they may receive nothing. The only insurance feature about the contract is that it insures Sothern himself against financial hardships during his lifetime by guaranteeing to him an income of $6,510 per year, regardless of how long he may live. It is insurance for life, rather than against death.

The courts have long recognized the essential differences between life insurance policies and annuity contracts. As early as 1879 Judge EARL, in *People* v. *Security Life Ins. & Annuity Co.* (78 N. Y. 114, at p. 128), said with reference to annuity contracts: " These are not cases of insurance, and they are not to be governed by any rules applicable to life insurance." In *People ex rel. Metropolitan Life Ins. Co.* v. *Knapp* (193 App. Div. 413) Mr. Justice H. T. KELLOGG in an opinion upon which the case was thereafter unanimously affirmed by the Court of Appeals (231 N. Y. 630), said: " The typical case of life insurance is found when a person insured pays annually during his life a stipulated sum to an insurer in consideration of which the insurer engages to pay on the death of the insured a lump sum to a beneficiary. The typical case of an annuity is found where a purchaser pays down a lump sum to a grantor who engages himself to pay a beneficiary during life a stipulated sum annually. In the one case the insurer receives an annual sum during the life of another and pays out a lump sum upon a stipulated death. In the other the grantor presently receives a lump sum and begins to disburse annual payments during life. In the former case the insured ' insures ' a dependent or

other person against the contingency of his death, and thereby seeks to make indemnity for a possible loss. In the latter case payments are immediately made without regard to the death of the purchaser, and there is no indemnity feature whatever. The one is a provision *for death*, and the other is a provision *for life*."

Reading the disputed provisions of sections 249-q and 249-r of the Tax Law in the light of these considerations, I am wholly unable to agree with the learned counsel for the appellant that it was the intention of the Legislature to thereby exempt from taxation the proceeds or surrender values of annuity policies like that at bar. The language employed by the Legislature in subdivision 9 of section 249-r to describe the property it exempted from taxation by the provisions of subdivision c of section 249-q does not seem to me to be at all ambiguous. The express words of description are " the amount receivable by all other beneficiaries as insurance taken out by the decedent upon his own life." I construe these words to mean literally what they say, and to extend exemption within the limit fixed by section 249-q to amounts receivable by beneficiaries other than the estate or representatives of the insured *as insurance* under policies of life insurance taken out by the insured upon his own life. It does not seem to me to be possible to construe these words of description so as to embrace within such description the proceeds or surrender value of an annuity contract like that at bar without distorting their accepted meanings beyond all reason.

The construction thus placed upon the statutes in question finds staunch support not only in the language of the statutes themselves but in their histories. Without recounting the numerous decisions involved or the reasons assigned therefor, it can be stated with assurance that from the inception of inheritance taxation in this State it has been the uniform tenor of all adjudications of our courts in cases in which the question was involved that the proceeds of life insurance policies by their terms payable to designated individuals, other than the personal representatives of the insured, were not subject to transfer tax. On the other hand, our courts have consistently held that the proceeds of insurance policies payable to the estate of an insured or to his personal representatives were taxable. (*Matter of Haedrich*, 134 Misc. 741, and cases cited.) It is quite apparent that subdivision c of section 249-q, which by reference incorporates the provisions of subdivision 9 of section 249-r, was intended by the Legislature to be but an enactment into statute law of these rules which had theretofore been laid down by the courts, subject, however, to the limitation as to amount therein expressed.

Counsel for the appellant urges that the opinion of Surrogate WINGATE in *Matter of Haedrich (supra)* supports his contention that the proceeds of the annuity contract in question are exempt from taxation. I do not so regard that decision. In that case the decedent took out certain life insurance policies on his own life. These policies were made payable to the Brooklyn Trust Company as trustee. The decedent deposited with the trustee certain securities which the trustee agreed to hold, to collect the income therefrom and to use such income, *first*, for the payment of premiums on such life insurance policies, *second*, to pay any surplus income to the decedent during his lifetime, and, *third*, after his death to distribute such securities among the beneficiaries of the trust. It was conceded in that proceeding that the securities thus deposited were properly taxed. Under the terms of the trust agreement, however, it was provided that upon the death of the decedent the trustee should collect the proceeds of the life insurance policies and set up therewith three trusts for the benefit of decedent's wife and daughters during their lifetime, with remainders over. The learned surrogate held that the proceeds of the insurance policies were for the benefit of beneficiaries other than the estate of the decedent or his personal representatives, and were, therefore, non-taxable. I fail to see that that decision has any important bearing upon the decision of the question at bar, although it must be conceded that many of the observations made by the surrogate support the view which I now take that the surrender value of the annuity contract here involved is taxable.

*Matter of Wilson* (143 Misc. 742) is also cited as sustaining the position taken by the appellant, but in my opinion without justification. In that case a decedent and his wife entered into a contract with an insurance company, by the terms of which, upon the payment of a single premium of $50,000, the company agreed to pay to them jointly during their lives the sum of $4,108 yearly. After the first death that sum was required to be paid annually to the survivor. The policy was irrevocable and could not in any way be altered or amended by either or both of the annuitants. The wife survived her husband and the State attempted to collect a tax upon the sum of $15,219, computed as of the date of the husband's death upon the annuity basis upon the expectancy of the life of the widow. Surrogate FOLEY held, and I believe properly so, that the proceeds of such policy were life insurance payable to a beneficiary other than the estate of the decedent or his personal representatives and were, therefore, non-taxable. It is to be noted that in that case the insurance feature of the contract, unlike that in the case at bar, extended beyond the date of death of the husband and insured the payment of a stated annuity to the wife for the

remainder of her life, regardless of how long that term might be. In the case at bar, however, as has been pointed out, the only insurance feature of the contract ended with the life of the decedent. It is also to be noted that in the *Wilson* case the policy was irrevocable and could not in any wise be altered or amended by either or both of the insureds, while in this case the right to change beneficiaries was by the contract expressly reserved to the decedent and he was also given therein the right at any time after two years from the date of its issue to surrender the contract and receive the commuted surrender value thereof.

If the surrender value of the annuity contract here involved is exempt from taxation it is so exempt only by virtue of the provisions of subdivision c of section 249-q. For the reasons above set forth I am fully persuaded that the surrender value of this contract is not exempted from taxation by virtue of these provisions, and, therefore, hold the same to be taxable.

Under the stipulation of counsel a decree is directed to be entered fixing the amount of the net estate of the decedent, after all deductions and exemptions, at the sum of $59,028.38, and assessing the tax thereon at $590.28. Otherwise the appeal is dismissed.

Submit decree in accordance with this opinion.