In re FLIGMAN'S ESTATE. STATE BOARD OF EQUALI-
ZATION, Appellant, *v.* FLIGMAN, Executrix, Respondent.

(No. 8,283.)

(Submitted June 11, 1942. Decided September 29, 1942.)

[129 Pac. (2d) 627.]

*Mr. Howard M. Gullickson,* Attorney General, and *Mr. I. W.*

506

*Choate,* counsel for the State Board of Equalization, for Appellant, submitted an original and a reply brief; *Mr. Choate* argued the cause orally.

*Messrs. Toomey, McFarland & Hall,* for Respondent, submitted a brief; *Mr. E. G. Toomey* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an appeal from an order fixing the inheritance tax in the matter of the Estate of Louis H. Fligman, deceased. The district judge found that three annuity contracts issued by certain life insurance companies authorized to do business in Montana, and which contracts were appraised in the aggregate amount of $26,975.15, "constitute insurance within the meaning of the inheritance tax laws of Montana * * * and therefore are exempt from imposition of inheritance tax." From this conclusion of the district court the board of equalization appealed. The facts are not in dispute.

The sole question presented for our determination is as to whether or not these annuity contracts are insurance. Counsel for the board of equalization relies upon the wording of section 10400.1, Revised Codes, which in effect exempts from operation of inheritance tax laws *"insurance payable upon the death of any person"* except such amount as is in excess of fifty thousand dollars ($50,000). Counsel's contention is that annuity contracts involved here do not constitute contracts payable upon death of the insured and are not, therefore, "insurance" within the meaning of section 10400.1, but are the proceeds of annuity contracts, and clearly taxable since they were transfers of property of the class specified in subdivision 3 of section 10400.1.

Counsel has cited numerous cases from various jurisdictions sustaining his contention that an annuity contract issued by a life insurance company is not insurance. Many well reasoned opinions are cited by the defendant to the contrary. While there may be a preponderance of authority in favor of the

contentions of the counsel for the state board, our statutes compel a contrary conclusion.

Subdivision 7 of section 10400.1, Revised Codes, reads in part as follows: "All insurance payable upon the death of any person over and above fifty thousand dollars ($50,000.00), shall be deemed a part of the property and estate passing to the person or persons entitled to receive the same * * *." The clause "payable upon the death" etc., tends to sustain the position of the state board, but section 6111, Revised Codes, appears to us to be to the contrary. It provides:

"Corporations, associations, and societies, organized to do the following-described business, are insurance corporations within the meaning of this Act: * * *

"2. To insure the lives and health of persons, and to grant, purchase, or dispose of annuities."

This statute conflicts with the board's contention, and furthermore the practices heretofore followed by the state auditor and insurance commissioner in collecting licenses from insurance companies are not in accord with the position of the state board.

Section 6112 provides:

"All insurance corporations, associations, and societies, as hereinbefore specified in the preceding section, before commencing to do business in the state of Montana, shall be required to secure a license, authorizing them to transact business of insurance corporations, associations, or societies, and shall pay to the state auditor, for such license, the following fees:

"For a license to collect in any one year *premiums* amounting to five thousand dollars or less, one hundred and twenty-five dollars.

"For a license to collect in any one year *premiums* over the sum of five thousand dollars, the sum of twenty dollars for each and every one thousand dollars to be so collected; * * *."

It clearly appears from that part of section 6111, supra, that whenever insurance companies are admitted to do business in the state of Montana, they have the same right to issue con-

tracts for annuities and deal in them the same as they have to issue policies of insurance on the lives and health of persons. It appears to us that this statutory provision makes no distinction between annuities and ordinary life policies. There are two facts that emphasize this conclusion:

1. The commissioner of insurance of the state of Montana bases the license fee provided for by section 6112, supra, on *all premiums* collected by the particular insurance company, irrespective of whether such premiums are collected by the insurance company on what is ordinarily termed life insurance policies or are on premiums paid for annuities, making no distinction between the two. It is our opinion that no distinction can be made between these annuity contracts and the meaning of the term "insurance" as referred to in section 6111, supra. However, the meaning of the statute is not as specific as it might be desired.

2. If annuities are not to be classed insurance, as we have indicated we think is done by Chapter 27 of which sections 6111 and 6112 are a part, we think they would logically come under the provisions of Chapter 316 relating to "Regulation of stock-brokers and investment companies," a chapter of our laws usually referred to as "blue sky laws" and so designated in the Code in parenthesis under the title above quoted. Section 4028 of Chapter 316, however, expressly excludes annuities from its provisions, as appears by these words: "The provisions of this Act shall not apply to the following securities: * * * 4. Policy contracts of insurance companies licensed to do business in this state."

In a summary of these different statutory provisions we see that section 6111 expressly authorizes life insurance companies to insure the lives and health of persons and to likewise "grant, purchase, or dispose of annuities." By virtue of subdivision 3 of section 10532, Revised Codes, we take judicial notice of the fact that under section 6112 the office of state auditor and insurance commissioner includes the premiums or payments for annuities along with the premiums collected for all other

kinds of life insurance in fixing the amount of the license that any particular life insurance company shall pay before it may obtain its annual license to do business in the state. Then we find that section 4028 expressly exempts "policy contracts" of life insurance companies from the provisions of the "blue sky" or securities Act, and we think these statutes show legislative intent to classify annuities along with other life insurance. We have nothing to show any contrary legislative intent except section 10400.1, and we do not think there is anything in that section nor in the general provisions of our statutes relating to life insurance that clearly repudiates the propriety of classifying annuities as insurance. There are well reasoned cases cited from other jurisdictions on either side of the question, but we think the case at bar must be determined by the construction of our own statutes. The question is new in this jurisdiction. We think our statutes rather clearly show that annuity contracts must be classified under the general heading of insurance, and that the decision of the district court must be affirmed.

We are satisfied that the particular annuity contracts involved here, irrespective of how they should be classed generally, must be held to be insurance for the reason that on the death of the annuitant the balance due is payable to a beneficiary named in the contract and thus are not materially different from a specific life insurance contract. The "twenty-year endowment" insurance contract is a popular form, and on maturity the insured under most such contracts may choose one of a number of specified modes of settlement, amongst the number, one may have the value of the contract payable in annual installments to himself. It is not unusual, moreover, to have any balance due at the death of the insured payable to the beneficiary and the distinction between such policies and a specific annuity contract is not broad enough to classify one as insurance and place the other under a different category so far as our revenue laws are concerned. Furthermore, if the insured dies during the twenty years, the entire sum is

payable to the beneficiary as life insurance. In that event it could not be contended that the twenty-year endowment policy was not an insurance contract. This emphasizes the material point here which is that so far as the beneficiary is concerned, whatever she receives from the life insurance company under either policy is life insurance on the insured's life, although what he himself may or might have received would have been as annuity or endowment proceeds. In other words, any of these contracts, in so far as it results in payment to the beneficiary upon the death of the insured, to that extent is an insurance policy and such proceeds subject to the statutory exemption from inheritance tax.

The fact that the state auditor and insurance commissioner includes moneys paid for annuities along with all other premiums on life insurance policies in arriving at a basis for computing the license tax has no little weight in bringing us to the conclusion announced. We are of the opinion that there is nothing to support a legislative intent to direct that annuities be classed as insurance when the license tax is computed under section 6112, and given a different classification under the inheritance tax statutes. The fact that the insurance commissioner, in fixing the amount of the annual license of the various life insurance companies operating in the state, has made no distinction between premiums collected on the two kinds of contract, and the position of the board of equalization in the case at bar, presents a conflict in law enforcement between two divisions of the executive department. Finally we think any possible question of legislative intent is set at rest by section 8158, Revised Codes, which provides: "An insurance on life may be made payable on the death of the person, or on his surviving a specified period, or periodically so long as he shall live, or otherwise contingently on the continuance or determination of life."

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and MR. JUSTICE ANDERSON concur.

MR. JUSTICE ERICKSON:

I dissent. I cannot agree with the conclusion reached by the majority that the proceeds of these annuity contracts are "insurance payable upon the death of any person" under subdivision 7 of section 10400.1. The majority's conclusion is contrary to all the autority in other jurisdictions, including the United States Supreme Court. Neither can I find any conflict between our various statutory provisions which so concern the majority. Further it seems to me this court has here not interpreted the law but instead has chosen to usurp the legislative function and amend it. The word "insurance" standing alone as it does in subdivision 7 has been often defined and the definition of the term is uniform and the word itself is a highly specific one. Webster's New International Dictionary, 2d Ed., 1289, defines "insurance" as the "act of insuring * * * against loss or damage by a contingent event * * * called a risk." The subject has been considered exhaustively by a number of writers. In a very recent work, 1 Federal Estate and Gift Taxation by Randolph E. Paul, at page 496, the author discusses section 811 (g) of the Internal Revenue Code, 26 U. S. C. A., Int. Rev. Code section 811 (g), which is similar to our section 10400.1, subdivision 7, in that it provides that the value of the gross estate includes "proceeds of life insurance * * * to the extent of the excess over $40,000 * * *"

Because of the aptness of the language used by the author, I quote it at some length: "A basic question of interpretation arising under the cryptic language of Section 811 (g) is whether the proceeds payable to the decedent's executor or beneficiary are 'life insurance' proceeds within the meaning of the statute. Recent unsuccessful efforts to obtain the special $40,000 exemption by contracts bearing the life insurance label, but combining insurance with annuity features, have

necessitated a fresh scrutiny of this fundamental concept. Basically, insurance is a device which furnishes protection against a risk of loss by distributing the losses of the few among the many who are subject to the same risk. The primary element is a risk of loss upon a contingent event, which loss is assumed by the promisor and pooled among a larger group. In the case of life insurance the risk insured is that of premature death. This risk of loss, borne in the first instance by the insurance company, is in effect distributed among the other policyholders who outlive their expectancies."

In 1 Cooley's Briefs on Insurance, 2nd Ed., 114, the author says that "the primary requisite essential to the existence of every contract of insurance is the presence of a risk of loss. The dominant feature of the contract is to grant indemnity or security against loss by reason of the risk (*Everley* v. *Equitable Surety Co.*, 190 Ind. 274, 130 N. E. 227)."

In 1 Couch Cyclopedia Insurance Law, 82, it is said: "A risk, which ordinarily means the liability assumed as specified on the face of the policy, is of the very essence of insurance and forms the very foundation of the contract."

In 32 C. J. 975, "insurance" is defined as "a contract by which one party, for a compensation called the premium, assumes particular risks of the other party." In 29 Am. Jur. 47 the author says "the essential feature of policies of insurance at the present time is substantially that of indemnity to the insured."

From the authorities cited and quoted from above, it is readily apparent that the term "insurance" is well understood, and that the same definition is universally accepted by all. It must be presumed that the legislature used the term, in the absence of anything to the contrary, in its generally accepted connotation.

Is the money payable under the contracts here in question money received by way of insurance under the Act? The contract resembles an insurance contract in two particulars. The first is that one of the parties to the contract is an insur-

ance company and the second is that as in an insurance contract, the named beneficiary receives the money upon the death of the other contracting party. There the similarity ceases and all of the authorities are agreed that an annuity contract and an insurance contract are opposites in that the essential feature of an insurance contract, namely risk, is absent from an annuity contract.

Again turning to 1 Paul, Federal Estate and Gift Taxation, at page 498, this discussion appears:

"Under the general 'definition' given in the last section it is simple enough to decide that an annuity is not insurance. Both insurance and annuity contracts are, it is true, gambles against the contingency of death. They are dissimilar, however, in that under an annuity the company's obligation is not to indemnify on the happening of a contingent event causing loss. From the viewpoint of risk a life insurance policy and an annuity contract are, in fact, diametrically different. Under the former the company will lose in the event of the insured's premature death; under the latter the company will gain. The only risk of the company issuing an annuity, except for the possibility that the annuitant may outlive his expectancy, is the investment risk that the capital may shrink in value or that the return may be less than the amounts payable to the annuitant.

"Under the traditional type of annuity current payments cease at death. Such annuities, however, failed to capture wide public favor because of the possibility that premature death might cause a loss of nearly the entire premium. Therefore there have been developed innumerable species of 'refund annuities, which have proved more tempting to buyers, but more troublesome to courts. Such annuities generally provide for continuing payments to the annuitant's designated beneficiaries in the event of his premature death, or for a lump sum payment of the unrecouped premium. Despite the provision for payments at death, the essential purpose of such contracts is still investment in a regular income, plus safety

of principal." (See, also, 29 Am. Jur. 52 and 3 C. J. S., Annuities, sec. 1, p. 1375.)

The United States Supreme Court in the recent case of *Helvering* v. *Le Gierse*, 312 U. S. 531, 61 S. Ct. 646, 649, 85 L. Ed. 996, has had occasion to pass directly upon the question before us. In holding that a certain so-called insurance contract and a certain annuity contract were together, in effect, a single contract providing for the payment of annuities to the decedent in her life time and upon her death to a beneficiary named so that the proceeds passing to the beneficiary were taxable under subsection (g) of section 811, supra, the court said:

"We think the fair import of subsection (g) is that the amounts must be received as the result of a transaction which involved an actual 'insurance risk' at the time the transaction was executed. Historically and commonly insurance involved risk-shifting and risk-distributing. That life insurance is desirable from an economic and social standpoint as a device to shift and distribute risk of loss from premature death is unquestionable. That these elements of risk-shifting and risk-distributing are essential to a life insurance contract is agreed by courts and commentators. See for example: (*Ritter* v. *Mutual L. Ins. Co.*, 169 U. S. 139, 18 S. Ct. 300, 42 L. Ed. 693; *In re Walsh*, D. C., 19 Fed. Supp. 567 [34 A. B. R. (n. s.) 238] ; *Guaranty Trust Co.* v. *Commissioner of Internal Revenue*, 16 B. T. A. 314; *Ackerman* v. *Commissioner of Internal Revenue*, 15 B. T. A. 635; I Couch, Cyclopedia of Insurance, sec. 61; Vance, Insurance, secs. 1-3; I Cooley, Briefs on Insurance, 2d edition, p. 114; Huebner, Life Insurance, Ch. 1.) Accordingly, it is logical to assume that when Congress used the words 're-ceivable as insurance' in section 302(g), it contemplated amounts received pursuant to a transaction possessing these features.' (*Commissioner of Internal Revenue* v. *Keller's Estate*, supra [3 Cir., 113 Fed. 2d 833] ; *Helvering* v. *Tyler*, supra [8 Cir., 111 Fed. 2d 422] ; [*Tyler* v. *Helvering*, 311 U. S. 629, 61 S. Ct. 49, 85 L. Ed. 400, supra] ; *Old Colony Trust Co.* v. *Commissioner of*

*Internal Revenue,* 1 Cir., 102 Fed. 2d 380; *Ackerman* v. *Commissioner of Internal Revenue,* [15 B. T. A. 635], supra.)

"Analysis of the apparent purpose of the partial exemption granted in section 302 (g) strengthens the assumption that Congress used the word 'insurance' in its commonly accepted sense. Implicit in this provision is acknowledgment of the fact that usually insurance payable to specific beneficiaries is designed to shift to a group of individuals the risk of premature death of the one upon whom the beneficiaries are dependent for support. Indeed, the pith of the exemption is particular protection of contracts and their proceeds intended to guard against just such a risk. * * * Hence, the next question is whether the transaction in suit in fact involved an 'insurance risk' as outlined above.

"We cannot find such an insurance risk in the contracts between decedent and the insurance company. * * *

"Considered together, the contracts wholly fail to spell out any element of insurance risk. * * *

"The fact remains that annuity and insurance are opposites; in this combination the one neutralizes the risk customarily inherent in the other. From the company's viewpoint, insurance looks to longevity, annuity to transiency. * * *

"Any risk that the prepayment would earn less than the amount paid to respondent as an annuity was an investment risk similar to the risk assumed by a bank; it was not an insurance risk as explained above. It follows that the sums payable to a specific beneficiary here are not within the scope of section 302 (g)."

The majority takes the view that the foregoing citations can be given no weight in determining the proper interpretation of subdivision 7 because of the provisions of section 6110 et seq., Revised Codes 1935, and section 4026 et seq., Revised Codes 1935, which, the majority says, show an intention on the part of the legislature to deviate in subdivision 7 of section 10400.1 from the well understood meaning of the word "insurance" and to include in that term annuities. Section 6110

et seq., supra, provide for general regulation and taxation of insurance companies and section 4026 et seq., supra, specifically exempt companies selling annuities from the provisions of the "blue sky laws." In section 6111, supra, "insurance corporations" are defined as those companies organized "to insure the lives and health of persons, and to grant, purchase, or dispose of annuities." This latter language, instead of indicating that the legislature intended to classify annuity contracts as insurance contracts, indicates just the contrary. This language distinguishes between the two. Section 6112 in providing license fees seems to include all of the business done by an insurance corporation and taxes the annuity business as well as the straight insurance business, but that again is no indication of an intention on the part of the legislature to define insurance so as to include annuity contracts. Section 4026 et seq., supra, in exempting corporations selling annuity contracts from the provisions of the "blue sky law" again have no value as any indication of legislative intention to call annuity contracts insurance. It may as well be said that because grocery stores in the smaller communities very frequently sell gasoline therefore gasoline and oil are groceries. An examination of the authorities shows that our inclusion of companies selling annuity contracts with insurance corporations for the purpose of regulation and taxation is not unique but instead is the rule. The New Jersey statute both as to inheritance tax and as to regulation is the same as ours. The New Jersey Act defining insurance companies appears as R. S. N. J. 1937, 17:17-1, subd. c, N. J. S. A. 17:17-1, subd. c, and reads, companies organized to make contracts "upon the lives or health of persons * * * and to grant, purchase or dispose of annuities" are insurance companies. 17:33-1 provides for license fees to be paid by insurance corporations and that license fee is based on the annuity business of the insurance corporation as well as the insurance business, as is true of our section 6112. With the same statute as to inheritance tax in every respect the New Jersey court, in considering exactly the

same question as we have before us now, held in a case decided in 1941, *In re Atkins' Estate,* 129 N. J. Eq. 186, 18 Atl. 2d 45, 49 that the proceeds of an annuity contract were taxable, saying:

"A life insurance policy is a contract whereby the insurance company agrees to insure or indemnify the beneficiary against the death of the insured; it is a contract by which the insured protects the beneficiary against loss accruing by the early or premature death of the insured. The refund annuity contract such as we are here considering is very different. By it the insurance company agrees to repay to the annuitant, in instalments during his life, the amount paid in by him to the company, and if at his death there be a balance unpaid to him, to pay that balance to the person designated by the annuitant to receive the same. It is a contract by which the annuitant protects himself, during his life, by making an investment which will assure the receipt by himself, of an adequate or desired annual sum during his life, with the further assurance that if he should die prematurely, his estate or those whom he desires to receive distribution thereof will not suffer the loss of the repayment he has himself not yet received."

The state of New York also has the same provisions as to the exemption of the proceeds of an insurance contract from the tax as is contained in our section and in addition, as is true of New Jersey, for the purpose of regulation, corporations selling annuity contracts are defined as insurance corporations, it being provided in Article I, section 9, of the New York Law, Baldwin's New York Consolidated Laws, 1938, Vol. 3: "The business of insurance within the meaning of this section shall include the issuance of * * * annuity contracts." There are also similar provisions as to taxation and exemption from the provisions of the "blue sky laws." The New York court has passed squarely on the same question as we have here and has held in *In re Sothern's Estate,* 257 App. Div. 574, 14 N. Y. Supp. 2d 1, and Id., 170 Misc. 805, 14 N. Y. Supp. 2d 509, that the proceeds of an annuity contract passing to a

named beneficiary after the death of the annuitant were not insurance within the statutory exemption.

Minnesota, like New Jersey, New York and Montana, defines "insurance corporations" so as to include companies selling annuity contracts for the purpose of regulation, using almost exactly the same language as our legislature used in subdivision 2 of section 6111. Their statutory provision appears as subdivision 4 of section 3315 of Mason's Minnesota Statutes, 1927, defining companies organized "to make contracts of life and endowment insurance, to grant, purchase, or dispose of annuities * * *" to be insurance companies. Then, as is true of Montana, New York and New Jersey, follow provisions fixing the license tax to be paid by such corporations, based on the annuity business as well as the insurance business, and exempting such corporations from the provisions of the "blue sky law." The Minnesota court, passing on exactly the same kind of contract as we have here, held in *In re Thornton's Estate*, 186 Minn. 351, 243 N. W. 389, that the proceeds of that contract passing to a named beneficiary were not within the exemption of their inheritance tax statute.

From the authorities cited—and there are a host of them in addition to those here appearing, all to the same effect— it is clear that annuities and insurance are entirely dissimilar and as has been held in the states of New Jersey, New York and Minnesota where the statutes are the same as ours, the provisions of the general statutes classifying annuity contracts with life insurance contracts for the purpose of regulation and taxation do not operate to include annuity contracts with life insurance in the exemption found in inheritance tax law.

It is well to note in addition that section 10400.1 was enacted as section 1 of Chapter 65 of the Laws of 1923. Ever since that time the proceeds of annuity contracts have been taxed. This court has said many times that weight must be given by this court to the interpretation of the statute by the executive department of the state government charged with its execution.

This proposition is so well established that it is not necessary to cite any authorities to support that statement. The state board of equalization, charged with the administration of this Act, has for twenty years collected inheritance taxes on the proceeds of annuity contracts. The legislature has met some ten times since 1923 and it must be charged with knowledge of the interpretation given the Act by the state board of equalization, yet it has not chosen to amend the Act so as to include annuities within the exemption appearing in subdivision 7 of section 10400.1. From the authorities cited, the reason for granting exemption to the proceeds of insurance contracts does not apply to annuity contracts.

But, says the majority in the last paragraph of its opinion, if what is said by it in the paragraphs preceding does not demonstrate conclusively that an annuity contract is life insurance within subdivision 7 of section 10400.1, any possible doubt that the majority may have is dispelled by the provisions of section 8158, Revised Codes. No discussion of this section appears in the majority opinion. However, it is apparent that the majority takes the view that that section purports to define a contract of annuity as life insurance. With this view I cannot agree. This section was enacted as section 3560, Civil Code of 1895. As so enacted it bore the title "Insurance upon Life—When Payable." The section has been re-enacted by the Revised Codes of 1907, 1921 and 1935, and in each case the title is retained. The only effect of this section is to provide that insurance upon life may be made payable in various ways. By the terms of this section, before it can apply, the contract must be one insuring life. I can find not the slightest hint in this section that the legislature intended by its enactment to define annuity contracts as life insurance.

To hold as the majority has held, seems to me to violate the plain language of our statutes. Not only that, but it is contrary to every authority and every court in the land on the question before us. No authority has been cited for the position of the majority, and none can be. The judgment should

be reversed and the cause remanded with direction to enter judgment for the appellant.

MR. JUSTICE ANGSTMAN:

I concur in the dissenting opinion of MR. JUSTICE ERICKSON. Rehearing denied October 14, 1942.